FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ APR 12 2016 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MELANIE NARDIELLO and TWO BY FOUR
NEW YORK, CORPORATION,

    Plaintiff,

-against-

THE TOWN OF OYSTER BAY, FREDERICK P.
IPPOLITO, TIMOTHY R. SIKE, DIANA S. AQUAIR
and GARY BLANCHARD,

    Defendants.
----------------------------------------------------------X

MEMORANDUM AND ORDER

CV 15-292

(Wexler, J.)

APPEARANCES:

HUTCHINSON & HUTCHINSON, P.C.
By: Richard L. Hutchinson, Esq.
127 South Street, Suite 2
Oyster Bay, NY 11771
Attorneys for Plaintiff

GOLBERG SEGALLA LLP
By: Christopher Kendric, Esq.
200 Garden City Plaza, Suite 520
Garden City, NY 11530
Attorneys for Defendants

OFFICE OF THE TOWN ATTORNEY
LEONARD GENOVA, TOWN OF OYSTER BAY
By: Matthew M. Rozea, Esq.
54 Audrey Avenue
Oyster Bay, NY 11771
Attorneys for Defendants

WEXLER, District Judge:

    Plaintiffs Melanie Nardiello ("Nardiello" or "Plaintiff") and Two by Four

New York, Corporation, ("Two By Four") (collectively, "Plaintiffs") bring this action against

-1-

the Defendants -- namely, the Town of Oyster Bay, New York, (the "Town"), Frederick P. Ippolito, the Town's Commissioner of the Department of Planning and Development ("Ippolito" or "Commissioner"), Timothy R. Zike, the Deputy Commissioner of the Department of Planning and Development ("Zike"), Diana S. Aquiar, the Deputy Commissioner of Code Compliance ("Acquiar"), and Gary Blanchard, the Chief Building Inspector ("Blanchard") (collectively, "Defendants"). Plaintiffs bring claims under 42 U.S.C. § 1983, 1985 and 1986, claiming that Defendants have violated due process and equal protection rights under the Fourteenth Amendment, the First Amendment right to petition, and conspired to preclude Two By Four from operating its business in violation of 42 U.S.C. §§ 1983 and 1985. Defendants move to dismiss the complaint in its entirety pursuant to Federal Rules of Civil Procedure ("Fed.R.Civ.P."), Rule 12(b)(6). For the reasons that follow, Defendants' motion is granted.

## BACKGROUND

I. Plaintiffs' Complaint

The following facts are taken from Plaintiffs' complaint, unless otherwise noted. Plaintiff Nardiello is the owner and sole director and officer of Plaintiff Two By Four, a dog-walking business formed in 2010 and operated out of her home. Complaint ("Cmplt."), ¶ 27. Her business grew and in time, she received violations from the Town for operating a business out of her home. Cmplt. ¶ 31. Nardiello sought a more appropriate location for the business and in 2012, Plaintiff Two By Four leased a premises at 34 South Street, Oyster Bay, NY, in an area zoned for light industry. Cmplt. ¶¶ 32-33.

In October 2012, Nardiello had a meeting, scheduled by Defendant Aquiar, with Defendant Ippolito to "get the Commissioner's blessing" for the operation of Plaintiff's business

at 34 South Street (the "Premises"). Cmplt. ¶¶ 36-37. At that meeting, Plaintiff Nardiello realized that she was previously acquainted with Defendant Ippolito in her role as a wine salesperson to Christiano's, a restaurant in Syosset, New York owned by Ippolito. Cmplt. ¶ 38. Plaintiff alleges that in two meetings at that restaurant, Ippolito solicited Plaintiff to perform sexual acts, which Plaintiff refused. Cmplt. ¶ 39.[1] At the October 2012 meeting concerning the Premises, Plaintiff asked Ippolito if he remembered Plaintiff and he said he did not. Cmplt. ¶ 40. Plaintiff alleges that in retaliation for Plaintiff refusing Ippolito's advances, Ippolito said he was "not giving her a permit." Cmplt. ¶ 41.

In December 2012, Plaintiff applied for a building permit to erect a one story prefabricated barn and renovate an existing free-standing building on the Premises. Cmplt. ¶ 44. Plaintiff "took matters into her own hands," and before getting a response on the permit application, erected the structure that was the subject of the application, "with the full expectation" that Ippolito would issue the permit before the building was complete. Cmplt. ¶ 45. The Commissioner failed to issue a permit or reject the application. Cmplt. ¶ 47. The Town Code ("Code"), at § 93-19(a), states that an application is to be examined "within a reasonable time after filing," and "if it appears that the work will be in compliance," the application will be approved and a building permit issued. Cmplt. ¶ 48.

On or about May 23, 2013, the Town issued misdemeanor violations against Two By Four for erecting a building without a permit and occupying the building without a certificate of occupancy. Cmplt. ¶ 50. Plaintiffs allege that the practice of the Department of Planning and

---

[1]The Court notes that the complaint does not state how much prior to the October 2012 meeting these solicitations were made, or what, if anything, happened thereafter.

Development was to issue violations to compel the alleged code violators to file for a permit, which Plaintiffs had already done. Cmplt. ¶ 51. On October 23, 2013, without having acted on the application, the Town, by order of Commissioner Ippolito, issued a second set of violations, for the same violations. Cmplt. ¶ 52.

On January 23, 2014, still without a ruling on Plaintiffs' application, the Commissioner issued "Notices of Dangerous Conditions" pursuant to his emergency powers, directing that the Premises by "secured, boarded, fenced, sealed or otherwise made safe," even though no investigations or reports had been made or filed to warrant such a notice. Cmplt. ¶ 54, 58. Plaintiffs allege this was a conspiracy by Ippolito and other Defendant Town officials to shut down or injure Two By Four. Cmplt. ¶ 56. Plaintiffs allege such acts were taken in retaliation for Plaintiff Nardiello's refusal to perform the sex acts Ippolito solicited. Cmplt. ¶ 59.

In 2014, Two By Four initiated an Article 78 proceeding in New York Supreme Court in Nassau County to enjoin the Commissioner from exceeding his authority and to compel him to act on Plaintiffs' application. Cmplt. ¶ 60. The Court there granted a temporary restraining order and directed that an inspection of the Premises be conducted. Cmplt. ¶ 61-63.

The inspection was conducted by Defendant Blanchard, who, Plaintiffs allege, then conspired with the other Defendants to concoct false allegations that the newly constructed wiring and the newly constructed above-ground waste lines were not in compliance with Code and had to be removed. Cmplt. ¶ 64.

On March 4, 2014, the Commissioner issued another "dangerous building letter" directing that the building on the Premises be "secured, boarded, fenced, sealed or otherwise made safe." Cmplt. ¶ 68. Plaintiff then instituted a contempt proceeding against the

Commissioner. Cmplt. ¶ 69. A request for a hearing before the Town Board was ignored. Cmplt. ¶ 70-71.

Plaintiffs' Article 78 proceeding is still pending. Cmplt. ¶ 80. According to Plaintiffs, in that context, Defendants retaliated against Plaintiffs' engineer witness, Nicholas DeSantis, hired in connection with that proceeding. Plaintiffs allege that Defendants have locked DeSantis' files away, even those not related to Plaintiffs' matter, and that Commissioner Ippolito directed the other Town employees to not process any applications submitted by DeSantis, in violation of 42 U.S.C. § 1985(b). Cmplt. ¶ 84-86.

Plaintiffs claim that Defendants violated their due process and equal protection rights under the Fourteenth Amendment, violated their First Amendment right to petition, and conspired to preclude Plaintiffs from operating its business in violation of 42 U.S.C. §§ 1983 and 1985. Defendants move to dismiss the complaint in its entirety, and for the following reasons, that motion is granted.

## DISCUSSION

I. Standards on Motion to Dismiss

The standards on a motion to dismiss are well-settled. In considering a motion to dismiss made pursuant to Rule 12(b)(6), the court must accept the factual allegations in the complaints as true and draw all reasonable inferences in favor of the plaintiff. Lundy v. Catholic Health System of Long Island Inc., 711 F.3d 106, 113 (2d Cir. 2013) (citations omitted); Martine's Service Center, Inc. v. Town of Wallkill, 2014 WL 321943, *1 (2d Cir. 2014) (citations omitted); Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 58-59 (2d Cir. 2010). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court rejected the standard set

forth in Conley v. Gibson, 355 U.S. 41 (1957) that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46. The Supreme Court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The "short and plain" pleading standard of Rule 8 of the Fed.R.Civ.P. does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678, quoting Twombley, 550 U.S. at 555 (other citations omitted). Twombley holds that a "formulaic recitation of cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Twombley, 550 U.S. at 555.

"Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Reciting bare legal conclusions is insufficient, and "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. A pleading that does nothing more than recite bare legal conclusions is insufficient to "unlock the doors of discovery." Iqbal, 556 U.S. at 678-679.

II.     Fourteenth Amendment Due Process Claims

The gravamen of Plaintiffs' due process claim is that Defendants violated those rights by not acting on, and denying Plaintiffs the permit necessary to operate the business of Two By Four. Nardiello alleges Ippolito's failure to act was in retaliation for her refusal of his sexual

advances and solicitations some time earlier, and constitutes a substantive and procedural due process violation.

A. Procedural Due Process

To state a procedural due process claim, a plaintiff must show that (1) he has a property right; (2) that right has been deprived by the government; and (3) the deprivation was without due process. Ahmed v. Town of Oyster Bay, 7 F.Supp.3d 245, 254 (E.D.N.Y. 2014) (quoting Local 342, Long Island Pub. Serv. Employees, UMD, ILA, AFL–CIO v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994)).

Plaintiffs' argument is that the Defendants denied their right to get a permit and therefore thwarted the business of Two By Four in an arbitrary and abusive manner by refusing to act on the permit application, by fabricating Code violations that required expensive remediation, and by attempting to influence the testimony of Plaintiffs' engineer. They claim an Article 78 proceeding is an inadequate remedy and insufficient due process. See Plaintiffs' Memorandum of Law In Support ("Pl. Mem."), at 14-15.

Without addressing whether Plaintiffs have stated a property right or whether its been deprived, the Court turns its attention to whether there was adequate due process. The Second Circuit has repeatedly stated that an Article 78 proceeding is a "perfectly adequate post-deprivation remedy" for an arbitrary deprivation of a property or liberty interest. Grillo v. New York City Transit Authority, 291 F.3d 231, 234 (2d Cir. 2002); see also Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 881 (2d Cir. 1996) (Article 78 provides "a perfectly adequate post-deprivation remedy" where there has been a random and arbitrary act). The availability of an Article 78 proceeding satisfies due process requirements

even if the relief available there is not the same as that available through a 42 U.S.C. § 1983 action alleging a due process violation.[2] Hellenic, 101 F3d at 881. Where there is an adequate state post-deprivation procedure to remedy a random, arbitrary deprivation of property or liberty, there is no constitutional violation (and therefore no § 1983 claim). Hellenic, 101 F.3d at 882. According to the Second Circuit, since an Article 78 proceeding provides an "adequate state post-deprivation procedure to remedy a random, arbitrary deprivation of property or liberty," its availability precludes a procedural due process violation claim. Hellenic, 101 F.3d at 881-882.

In the present case, not only was an Article 78 proceeding available to Plaintiffs, but pursued by Plaintiffs. The complaint alleges it is still pending. Regardless of whether there was a property interest that was deprived, the Court finds that the availability of the Article 78 proceeding defeats Plaintiffs' procedural due process claim. Ahmed v. Town of Oyster Bay, 7 F.Supp,3d 245, 254-255 (E.D.N.Y. 2014) (regardless of property interest, availability of Article 78 post-deprivation remedies defeats the procedural due process claim). This applies even if Plaintiffs claim Defendants' failed to act on Plaintiffs' application in a timely manner. See Sherman v. Town of Chester, 2015 WL 1473430, * (S.D.N.Y. March 31, 2015) (availability of Article 78 forecloses a due process claim based on delay or failure to rule on application) (citing Nenninger v. Village of Port Jefferson, 509 F. App'x. 36, 39 fn.2 (2d Cir. 2013)). Accordingly, Defendants' motion to dismiss the procedural due process claim is granted.

B. Substantive Due Process

To state a substantive due process claim, a plaintiff must allege facts establishing (1) he

---

[2]The availability of the Article 78 proceeding provides sufficient due process even if the party fails to avail itself of the opportunity to pursue the Article 78 proceedings. See Hellenic, 101 F.3d at 881.

has a valid property interest, and (2) that the town "infringed that interest in an arbitrary or irrational manner." See O'Mara v. Town of Wappinger, 485 F.3d 693, 700 (2d Cir. 2007); Natale v. Town of Ridgefield, 170 F.3d 258, 262–63 (2d Cir. 1999); Soundview Associates v. Town of Riverhead, 893 F.Supp.2d 416, 430-431 (E.D.N.Y. 2012); Sherman v. Town of Chester, 2015 WL 1473430, at *11 (S.D.N.Y. March 31, 2015). A plaintiff must plead "governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Velez v. Levy, 401 F.3d 75, 93 (2d Cir. 2005) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)); Rosa R. v. Connelly, 889 F.2d 435, 439 (2d Cir. 1989) (a plaintiff must establish that the government decision it challenges "was arbitrary or irrational or motivated by bad faith").

There are two hurdles facing Plaintiffs' substantive due process claim. The first is whether Plaintiffs have a valid property interest in the building permit or certificate of occupancy.

The Second Circuit has often addressed the issue of whether a building permit issued by a local authority is a "property interest" that triggers due process protection. A property interest is established if the plaintiff can show clear entitlement to the approval. "[O]ur precedent is clear: 'to establish a federally protectable property interest in a state or local permit ..., the plaintiff must show that, at the time the permit was denied, there was no uncertainty regarding his entitlement to it under applicable state or local law, and the issuing authority had no discretion to withhold it in his particular case.'" C.C.S.com USA, Inc. v. Gerhauser, 518 Fed.Appx. 1, 2 (2d Cir. 2013) (quoting Natale v. Town of Ridgefield, 170 F.3d 258, 263 n. 1 (2d Cir. 1999) and citing O'Mara v. Town of Wappinger, 485 F.3d 693, 700 (2d Cir. 2007)).

Plaintiffs cite to the language of Town Code § 93-19(a) to argue that the town officials here had little, if any, discretion in granting the application for a permit, and therefore there was clear entitlement that it would be granted. That section, which governs the "approval, disapproval or partial approval" of building permits, states that:

> The application for a building permit shall be examined within a reasonable time after filing and if, after examination, it appears that the proposed work will be in compliance with the provisions of this chapter and other laws applicable thereto, and that the proposed construction or work will be safe, that application will be approved and a building permit issued; if the examination reveals otherwise, the application will be returned as rejected and the findings noted in a report attached to the application.

Town Code, § 93-19(a).

The Court disagrees that Plaintiffs had "clear entitlement" to a permit. While the language does state that the application "will be approved," such approval is based on a determination that "the proposed work will be in compliance" and "safe." This language amounts to discretion in the issuing authority to determine if the proposed work complies and is safe, and therefore whether the permit should issue. There was no "clear entitlement" to the permit; the Town had to review and make a compliance and safety determination. This would include reviewing whether violations existed. Thus, there was "uncertainty" over whether the application would be granted.

The Court follows the clear precedent of the Circuit that where there is "uncertainty," there is no federal protected property right in a state or local permit. The Second Circuit has stated, in a case more recent than those cited by Plaintiffs,[3] that there is no property interest

---

[3]Plaintiffs cite Norwood v. Salvatore, 12-CV-1025, 2013 WL 1499599 (N.D.N.Y. April 10, 2013), which does not discuss the Second Circuit decision in C.C.S.com, and relies on Hampton Bays Connections, Inc. V. Duffy, 127 F.Supp.2d 364 (E.D.N.Y. 2001). In reviewing a motion to dismiss, the Court in Hampton Bays found plaintiffs had sufficiently stated a property

-10-

where an inspection is required to determine if violations exist at the property prior to issuing the permit. C.C.S.com USA, Inc. v. Gerhauser, 518 Fed.Appx. 1, 2 (2d Cir. 2013). In that case, there was a violation due to an addition made to the building without prior approval. The existence of that violation, and the authority of the local official to deny the permit when there was a violation, created "uncertainty" and thus there was no " clear entitlement" that created a property interest. C.C.S.com, 518 Fed.Appx., at 2 (distinguishing Walz v. Town of Smithtown, 46 F.3d 162 (2d Cir. 1995), where the permit issued automatically upon submission of the proper information). See also RRI Realty v. Inc. Village of Southampton, 870 F.2d 911, 918-919 (2d Cir. 1989) (even if approval was expected, the officials had discretion, which defeated the existence of a federally protected property interest); Sherman v. Town of Chester, 2015WL 1473430, at *9 (the Town's broad discretion to review subdivision applications defeats the existence of a protected property interest); but see Ahmed v. Town of Oyster Bay, 7 F.Supp.3d 245, 258-259 (E.D.N.Y. 2014) (property interest established where the non-conforming use predated the restrictive ordinance, and the plaintiff claimed there were no conditions that warranted shutting down the store). Here too, the Code required a review to determine if the proposed work was in compliance, and had authority to deny the permit if a violation existed. Thus, there was no "clear entitlement" and no property interest.

Plaintiffs' substantive due process claim faces a second hurdle. Even were Plaintiffs able to establish a federally protected property interest, they fail to show that Defendants' conduct

---

interest in a building permit where the town code directed that the building official "shall" issue the permit if the plans meet the relevant regulations and ordinances. The Court noted that whether the facts ultimately reflected that the inspector exercised discretion could be re-addressed on summary judgment.

alleged conduct is sufficiently egregious or outrageous to constitute a substantive due process violation. Accepting Plaintiffs' allegations as true, as the Court must on a motion to dismiss, that Ippolito was retaliating against Plaintiff Nardiello for rejecting his sexual solicitations,[4] the complaint fails to allege that Defendants' conduct in connection with the application review was egregious, outrageous or in bad faith. Plaintiff admits that rather than wait on the application to be granted or a permit issued, she "took matters into her own hands" and erected the pre-fabricated structured for which the permit application had been filed. Cmplt. 45. Indeed, the misdemeanor violations were issued on May 23, 2013 for "erecting the building without a permit, and occupying the building without a certificate of Occupancy." Cmplt. ¶ 50. These violations were issued a second time, for the same violations, on October 23, 2013. Cmplt. ¶ 52. Plaintiffs conspicuously do not allege that the violations at issue in the May 2013 violations were resolved prior to the issuance of violations for the same reasons in October 2013.

The Court finds that the issuance of violations do not constitute egregious or outrageous conduct. Plaintiff herself alleges that she "took matters into her own hands" and erected the structure without a permit, and thus operated without a certificate of occupancy. The Town cited her for violations she agrees she committed. There is no egregious conduct or bad faith. See also C.C.S.com USA, Inc. v. Gerhauser, 518 Fed.Appx. 1, 2 (2d Cir. 2013) (due process claim denied where there is a violation that precludes issuance of a permit).

Plaintiff also alleges that Defendants acted in bad faith by issuing "Notices of Dangerous Conditions" in January 2014, directing that the building be "secured, boarded, fenced, sealed and otherwise made safe." Cmpt. ¶ 54, 58. In response, Plaintiffs filed an Article 78 proceeding and

---

[4]The complaint alleges that Defendant Ippolito did not remember Plaintiff. Cmplt. ¶ 40.

that court directed that the Premises be inspected, which it was. Cmplt. ¶ 60-63. That inspection was conducted on January 31, 2014, and Plaintiffs allege that Defendants "concocted false allegations" that the wiring and waste lines were not in compliance and needed to be removed. Cmplt. ¶ 63-64. On March 4, 2014, relying on these "false allegations," Defendants issued another "dangerous building letter," directing that the Premises be boarded and secured. Cmplt. ¶ 68.

Plaintiffs' claims of egregious and outrageous conduct turn on the claim that Defendants "concocted false allegations," and in reliance on these concocted allegations they knew to be false, they issued the "dangerous building letter." Yet, these allegations that the violations were concocted are merely conclusions and contain no factual support. Without more, they are insufficient to establish that Defendants acted in an arbitrary or irrational manner, or engaged in "egregious and outrageous conduct" necessary to support a substantive due process claim. Iqbal, 556 U.S. at 678-679 (a pleading that does nothing more than recite bare legal conclusions is insufficient to "unlock the doors of discovery"). Defendants' motion to dismiss Plaintiffs' substantive due process claim is granted.

III.   14th Amendment Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment "commands that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)). Plaintiffs here allege they were denied equal protection under the law, not due to membership in a protected class, but on the theory that they were subjected to "selective enforcement," or treated as a "class of one."

To state a claim for "selective enforcement," a plaintiff must show that "(1) they were treated differently from other similarly situated individuals and (2) this differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 16 (2d Cir. 1999) (quoting LaTrieste Restaurant & Cabaret Inc. v. Village of Port Chester, 40 F.3d 587, 590 (2d Cir. 1994)); MacPherson v. Town of Southampton, 07-CV-3497, 2013 WL 6058202, at *14 (E.D.N.Y. November 14, 2013) (citations omitted).

A plaintiff proceeding on a "class of one" equal protection theory must plead "an extremely high degree of similarity between themselves and the persons to whom they compare themselves." Sacher v. Village of Old Brookville, 967 F.Supp.2d 663, 670 (E.D.N.Y. 2013) (citing Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir.), cert. denied, 131 S.Ct. 824 (2010)). In particular, such a claim requires that the plaintiff establish that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." Ruston, 610 F.3d at 59-60 (citations omitted). In that case, the Court affirmed the district court's dismissal of plaintiffs' equal protection claims, which were based on the town denying sewer access to plaintiff but granting it to others, because the plaintiff failed to allege that the other identified properties were sufficiently similar that "no rational person could see them as different." Ruston, 610 F.3d at 60.

The allegations Plaintiffs put forth here similarly fail to state a claim -- whether as a "selective enforcement" or "class of one" claim. There is only one allegation in the complaint that speaks to Plaintiffs being treated differently than others. Paragraph 51 claims that the Department of Planning and Development had a practice of issuing violations to compel parties to file for permits. No where else in the complaint does Plaintiff allege any further specificity regarding how others were treated, who those others were, or how their treatment varied from the treatment Plaintiffs received. Simply put, the allegations even accepted as true, do not provide any indication of how "similarly situated" persons were treated, much less treated differently, or how "no rational" person could see a reason to justify different treatment.

The Court finds that Plaintiffs' allegations, even accepted as true, do not adequately show that they were being treated differently than those similarly situated. Therefore, the equal protection claim fails and Defendants' motion to dismiss the equal protection claim is granted. MacPherson v. Town of Southampton, 2013 WL 6058202, *14 (E.D.N.Y. 2013) (because plaintiffs' complaint is bereft of factual allegations suggesting that MacPherson is being treated differently from others similarly situated, equal protection claim—whether pled as a selective enforcement claim or a class-of-one claim—fails).

IV. First Amendment Right to Petition Claim

Plaintiff claims that the Defendants' failure to issue a permit has denied her the right to petition government, including her right to petition the Zoning Board of Appeals or state court for review of Defendants' handling of the application. Cmplt. ¶ 49.

The First Amendment provides that the government cannot abridge the right of the people to "petition the Government for a redress of grievances." U.S. Const. amend 1. The Supreme

Court has stated that the "right to petition [is] one of 'the most precious of liberties safeguarded by the Bill of Rights.'" BE & K Constr. Co. v. Nat'l Labor Relations Bd., 536 U.S. 516, 524, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002) (quoting Mine Workers of Am. v. Ill. State Bar Ass'n, 389 U.S. 217, 222, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967)). "It is well-settled that 'the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances.'" Soundview Associates v. Town of Riverhead, 973 F.Supp.2d 275, 287 (E.D.N.Y. 2013) (citing Bill Johnson's Rests. v. NLRB, 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983) and City of N.Y. v. Beretta U.S.A. Corp., 524 F.3d 384, 397 (2d Cir. 2008)).

It appears that Plaintiffs' claim is that by Ippolito's failure to issue a permit, Plaintiffs' were denied a "right to petition" or access a court to challenge that decision (or lack thereof). Plaintiffs also appear to argue that once their application was filed, Ippolito further thwarted Plaintiffs' First Amendment rights by issuing the dangerous building notices, concocting the false violations, and engaging in a campaign "to alter the testimony" of Plaintiffs' expert witness. See Pl. Mem., at 17-18.

Even accepting Plaintiffs' allegations as true, the claim for violation of the First Amendment right of petition fails. The complaint itself alleges that Plaintiffs had court review. They initiated an Article 78 proceeding and indeed were granted temporary restraining order enjoining the Commissioner from acting further on the dangerous building notice until an inspection occurred. Cmplt. ¶ 61-62. Plaintiffs further allege that the Article 78 proceeding is still pending. Cmplt. ¶ 80. The Court finds that the allegations fail to state a claim under the First Amendment for a right of petition. Nor do Plaintiffs allege how a First Amendment right to free speech has been violated. Defendants' motion to dismiss the First Amendment claim is

granted.

V.  Claim under 42 U.S.C. § 1985(2)

Section 1985(2) contains two separate clauses. The first makes it unlawful for "two or more persons ... [to] conspire to deter, by force, intimidation, or threat, any party or witness ... in any court of the United States from attending such court, or from testifying to an matter pending therein .... or to injure such party or witness in his person or property on account of his having so attended or testified." 42 U.S.C. § 1985(2). The first clause expressly involves conspiracies to obstruct justice in federal courts. Herman v. City of New York, 15-CV-3509, 2016 WL 901667, at *3 (E.D.N.Y. March 9, 2016) (citing Keating v. Carey, 706 F.2d 377, 385 (2d Cir. 1983)).

The second clause makes it unlawful for "two or more persons [to] conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State ... with intent to deny to any citizen the equal protection of the laws ...." 42 U.S.C. § 1985(2). By its own words, the clause requires that conspirators have an "intent to deny to any citizen the equal protection of the laws." Id. "This requirement has been interpreted to mean that plaintiff must allege discriminatory 'racial, ethnic, or class-based animus' motivating the conspirators' action." Herman, 2016 WL 901667, at *3 (citing Zemsky v. City of New York, 821 F.2d 148, 151 & n. 4 (2d Cir. 1987) and Kush v. Rutledge, 460 U.S. 719, 722-24 (1983)).

Plaintiffs claim that § 1985(2) has been violated by a conspiracy amongst the Defendants "to retaliate and influence the testimony" of Plaintiffs' witness, Nicholas DeSantis, and preventing DeSantis from conducting business with the Town. See Pl. Mem., at 20. The Court finds that Plaintiffs fail to adequately allege a claim under § 1985(2). As noted above, the first clause applies to proceedings in federal court, not applicable here. Furthermore, as noted above

in connection with Plaintiffs' equal protection claim, Plaintiffs fail to allege how Defendants intended to deny Plaintiffs "equal protection of the laws." Plaintiffs also fail to allege that Defendants are motivated by "discriminatory 'racial, ethnic, or class-based animus.'" Herman, 2016 WL 901667, at *3. Accordingly, Defendants' motion to dismiss Plaintiffs' conspiracy claim under § 1985(2) is granted.[5]

## CONCLUSION

For the reasons stated above, the Defendant's motion to dismiss the complaint is granted. The Clerk of the Court is directed to dismiss this case in its entirety and close this matter.

SO ORDERED.

s/ Leonard D. Wexler

---
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
April 12, 2016

---

[5]Since Plaintiffs' substantive constitutional violation claims fail, so do Plaintiffs' claims of municipal liability claims. See Segal v. City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell was entirely correct.").